UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| **PHILIP ROGERS** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-01383 |
| | ) | |
| **ROBERT BROWN** and | ) | |
| **IFLYAJET, INC.** | ) | |
| | ) | |
| *Defendants* | ) | |
| | ) | |

## DEFENDANTS ROBERT BROWN'S AND IFLYAJET INC.'S MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS UNDER RULES 12(b)(1), 12(b)(6), AND *FORUM NON CONVENIENS*

Defendants Robert Brown ("Mr. Brown") and IFLYAJET, Inc., ("IFLYAJET") (collectively "IFJ") by counsel submit the following as their Memorandum in Support of Motions to Dismiss under Rules 12(b)(1), 12(b)(6), and the Doctrine of *Forum Non Conveniens*:

## INTRODUCTION

This Case arises out of an already-pending companion case in Gwinnett County, Georgia, in which Plaintiff has participated in discovery, his business entity has filed for summary judgment, and he will soon be added as a party defendant. That case involves a dispute over the management of a G-IV jet known and referred to hereinafter as "N250KC." In short, the case before this Court should be dismissed because, as proven by his own allegations, Plaintiff owns no part of the subject jet plane[1], signed none of the subject documents in his individual capacity,

---

[1] At Para. 19 of the carefully worded Complaint, Rogers alleges, and so the Court must treat as true for purposes of these Motions, the fact that Rogers' company, OADS, not Rogers, purchased the N250KC. At Para. 20, Rogers again confirms that OADS, not Rogers, purchased an interest in the N250KC. Exhibit B to the Complaint further confirms that Rogers was not a party to the

paid no money[2], suffered no harm, has no standing, has no claim, and the issues in dispute will be decided in litigation already pending where it ought to be tried in the state courts of Georgia.

For context, Plaintiff brought this suit a mere two days after IFLYAJET moved to add Plaintiff to a pending case in the Gwinett County Superior Court in Georgia (the "Georgia Case), which case concerns the very same 24.75% ownership interest in N250KC that is the subject of this case.   In the Georgia Case, two companies (OPTICAL AIR DATA SYSTEMS, LLC ("OADS") and WHBB[3], LLC) owned by Phil Rogers, his wife, Alisa, and their daughter, Beth are the current defendants. In the instant case Plaintiff, Phil Rogers, claims to be "one of [the] owners" of an aircraft – known as N250KC.   In the Georgia case, OADS—not Plaintiff—claims to be the buyer/owner of the same N250KC. The documents, including FAA registration, confirm that OADS and/or WHBB, not Phil Rogers, own the N250KC.

In this Complaint, Plaintiff seeks to assert, in his personal capacity, claims[4] that belong to OADS. Indeed, OADS has asserted substantially similar claims in the Georgia Action. The Complaint should be dismissed because Plaintiff was not a party to the subject transaction, owns no part of N250KC, is not a party in his individual capacity to the Exhibits to Plaintiff's Complaint,[5] and has suffered no harm in his personal capacity.  Thus, the Complaint makes clear

---

transaction in his individual capacity. Para. 21 of the Complaint alleges that certain undefined "parties" signed Exhibits "C," and "D" to the Complaint. The Exhibits, which the Court must accept as true for purposes of this Motion, confirm that OADS, not Rogers, executed the documents and acquired an ownership interest in the N250KC.

[2] At Para. 17 of the carefully worded Complaint, Rogers claims that Defendants' conduct "cost" him several hundred thousand dollars.  Rogers does not allege that he paid any money to Defendants or that he purchased any ownership interest in the N250KC.  He did not.

[3] It is believed that "WHBB" stands for "We Hate Bob Brown."

[4] For avoidance of confusion, Defendants deny that Plaintiff, OADS, WHBB, or anyone else actually have any viable claims.

[5] In addressing the motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider the exhibits that Plaintiff attaches to his Complaint.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (considering "documents that are explicitly incorporated into the complaint by

that Plaintiff has no standing, and no claims to assert, even if he did own the jet. Plaintiff claims that he has suffered economic damages because (1) the transaction somehow allegedly "cost" him "thousands of dollars" (Dkt. 1 at ¶ 17, 44); (2) N250KC's value has diminished and is now "unsalable"; (*id.*); and (3) that Plaintiff's "ownership stake of the N250KC is also jeopardized." Plaintiff also claims that his pilot's license is at risk (*id.* at ¶ 45). The economic damages are not personal to Plaintiff. Plaintiff implausibly alleges that he "spent" money in connection with N250KC.  Plaintiff intimates an ownership interest in N250KC, but affirmatively alleges in paragraphs 19-21, including Complaint Exhibits B, C, and D that he does not have an ownership interest in N250KC. OADS, not Plaintiff, purchased N250KC and has an ownership interest in N250KC. Dkt. 1 at ¶ 19, Dkt. 1-3; Dkt. 1-4. Moreover, OADS is the entity that paid for its interest in N250KC, as well as for use and maintenance of N250KC. Plaintiff has paid nothing to IFJ in connection with N250KC—indeed, he fails to allege that he paid anything to IFJ. Plaintiff's lawsuit improperly attempts to claim an interest in OADS' property.  Further, Plaintiff's allegation that his pilot's license is at risk is no more than the speculative possibility of a future injury.

In addition, this Court should decline to exercise declaratory judgment jurisdiction because Plaintiff has not raised a controversy as to Plaintiff and IFJ, there is no injury to Plaintiff, and the Georgia Action will fully dispense with Plaintiff's declaratory judgment claims. The Complaint should also be dismissed because Plaintiff has failed to state a claim under Rule 12(b)(6). Should any claims remain, they should be dismissed under the doctrine of *forum non conveniens*.

---

reference" and "those attached to the complaint as exhibits") (citations omitted).  To the extent there is a conflict between the allegations and the exhibit, the exhibit controls. *Id.* ("[T]he exhibit-prevails rule…provides that in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.") (citations and internal quotation marks omitted).

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

On October 11, 2023, Plaintiff instituted this action.  On October 20, 2023, Plaintiff served Defendants.  This motion is timely filed within 21 days of service of the Complaint.

### A.     Relevant Allegations Contained in the Complaint

Defendant Robert Brown is the owner of Defendant IFLYAJET, Inc. (collectively IFJ). Dkt. 1 at ¶ 1. IFLYAJET is an aircraft management company that offers "a complete turnkey management solution for aircraft owners looking for affordable, personal, and accountable aircraft management." Dkt. 1 at ¶ 1. Beginning in January 2021, "Robert Brown texted Rogers concerning an opportunity for Rogers, either individually or through an affiliated entity, to purchase a share of the Gulfstream G-IV, FAA Registration N250KC and bearing serial number 1025 (the 'N250KC')." Dkt. 1 at ¶ 13.

Although Plaintiff often refers to himself as the "buyer" or "owner" of N250KC, the allegations of the Complaint make clear that Optical Air Data Systems, LLC ("OADS") is the entity that purchased N250KC. Paragraph 19 of the Complaint states: "The purchase of the Rogers' share of the N250KC was completed in or around January 2021, with Rogers ultimately purchasing the quarter share of the N250KC through his company, OADS." Dkt. 1 at ¶ 19.

The Complaint claims that there is a January 2021 Shared Ownership Agreement attached as Exhibit B to the Complaint. Dkt. 1 at ¶ 19. Again, any agreement entered into in January 2021 was between IFLYAJET and OADS as demonstrated by Paragraph 19 of the Complaint and the attached exhibits.  Neither Plaintiff nor Mr. Brown are parties to the Agreement attached as Exhibit B to the Complaint, as the Court can plainly see from the face of Exhibit B. *See* Dkt. 1-2 at 1, 10. Instead, Mr. Roger's company Optical Air Data Systems, LLC ("OADS") and IFLYAJET are

parties to the agreement. *Id.* Moreover, the Agreement states that it was entered into as of "October _ 2022." Dkt. 1-2 at 1.

The other allegations of the Complaint establish that whatever Agreement may have existed in January 2021 was between IFLYAJET and OADS. The Complaint alleges that "[i]n or around July 2021, the parties executed several additional agreements, which agreements modified and superseded the January 2021 Shared Ownership Agreement." Dkt. 1 at ¶ 21. The Complaint identifies only two (2) agreements entered into in July 2021: the Joint Ownership Agreement of the Owners of N250KC (the "Ownership Agreement") and the Aircraft Management Agreement (the "Management Agreement") (collectively the "N250KC Agreements"). The N250KC Agreements are Exhibits C and D to the Complaint. Neither Mr. Brown nor Mr. Rogers are parties to the N250KC Agreements in their personal capacities. Instead, Mr. Roger's company, OADS, on one hand and IFLYAJET, on the other hand, are parties to the N250KC Agreements. *See* Dkt. 1-3 at 1, 11; Dkt. 1-4 at 1, 13.  Thus, regardless of whether the Complaint is accurate that a January 2021 agreement regarding N250KC exists, the Complaint alleges that the July N250KC Agreements superseded the alleged January 2021 Agreement and that those Agreements control. Dkt. 1 at ¶ 21.

Pursuant to the July Ownership Agreement, IFLYAJET owns a 1% interest in N250KC and OADS—not Plaintiff—owns a 24.75% interest, with other entities owning the remaining interest in N250KC. Dkt. 1-3 at 1.

The July 2021 Management Agreement, which Plaintiff claims controls the relationship, contains a choice of law and forum selection provision. Dkt. 1-4 at Section 14(a). Pursuant to that provision, the parties agreed "to submit to the exclusive jurisdiction of the courts in Georgia." Dkt. 1-4 at Section 14(a). The July 2021 Ownership Agreement contains a choice of law provision

which requires that the Agreement be "governed by, and . . . be construed and enforced in accordance with, the laws of the State of Georgia. Dkt. 1-3 at Paragraph 11(e).

According to the Complaint, "Rogers, through his affiliated entity [OADS], purchased a share of the N250KC and entered into the Shared Ownership Agreement in good faith, and in reliance on both Brown's express representations concerning the operation and management of the N250KC and also in reliance on Brown to act in good faith. Brown's representations were false at the time they were made." Dkt. 1 at ¶ 20. Plaintiff claims that "[contrary] to Brown's representations," Plaintiff would only "be permitted to use the N250KC sparingly as Brown consistently, and illegally, chartered the plane out to non-owners for their use in violation of federal aviation laws and regulations and concealed this activity from the other owners of N250KC, including Rogers." Dkt. 1 at ¶ 22. Plaintiff further claims that "less than one month after Brown induced Rogers to purchase a share of the N250KC, Brown began chartering the plane for use by non-owners using the Timesharing Agreements, which agreements were never disclosed to Rogers." Dkt. 1 at ¶ 24.

Plaintiff, treating himself and OADS as alter-ego entities,  claims that he spent $400,645.09 since the purchase of the N250KC to cover maintenance and usage expenses and $550,000.00 in capital expenditures. Dkt. 1 at ¶ 38. According to Plaintiff, "[a]s a result of Brown's wide-ranging fraud, [Plaintiff] has invested hundreds of thousands of dollars into the N250KC and now holds an unsaleable interest in an aircraft involved in a wide ranging illegal charter operation." Dkt. 1 at ¶ 44. Plaintiff further claims that "his ownership stake of the N250KC is . . . jeopardized." Dkt. 1 at ¶ 45. As other paragraphs of the Complaint and the Exhibits thereto demonstrate, Plaintiff does not hold an ownership interest in N250KC—OADS does. Dkt. 1 at ¶¶ 19, 20, 22; Dkt. 1-3, Dkt. 1-4.  The Agreements attached to the Exhibits demonstrate that OADS, not Plaintiff, agreed to

make an initial capital expenditure to purchase N250KC. Dkt. 1-3 at ¶ 10. Likewise, OADS, not Plaintiff, was required to pay for maintenance and use of N250KC. Dkt. 1-4 at Section 4.

Plaintiff claims that "Brown fraudulently affixed Rogers' signature to contracts without Rogers' knowledge." Dkt. 1 at ¶ 40. The Complaint only identifies one such contract—a "Joint Ownership Agreement of the Owners of N250KC" dated October 2022—which Plaintiff claims Brown filed with the Federal Aviation Administration. Dkt. 1 at ¶ 41, 42. Of course, Plaintiff is not a party to that document—OADS is. While Plaintiff inaccurately identifies the Agreement as a "January 2021 Shared Ownership Agreement," the Court can plainly see that it is dated October 2022. *Compare* Dkt. 1 at ¶ 19 *with* Dkt. 1-2, at 1. Again, Plaintiff is not a party to Exhibit B, as its signature block clearly shows him as signing on behalf of OADS. Plaintiff claims that "Browns' filing of fraudulent documents with the FAA puts [Plaintiff's] pilot license at risk. Dkt. 1 at ¶ 43. Plaintiff does not allege that he ever flew, trained on, or is qualified to fly Gulfstream jets, including N250KC. *See generally* Dkt. 1. In any event, that allegation confirms the absence of any ripe claim because it is speculative.

Because Plaintiff was not an owner of N250KC, he was not authorized to board N250KC except as a guest of OADS or one of the other joint owners of N250KC.[6] Brown Dec. ¶ 4. In addition, the insurance agreements covering N250KC expressly prohibited Plaintiff from manipulating the controls of N2450KC; thus, he could not pilot the jet. Brown Dec. ¶ 6.

---

[6] Because IFJ is bringing a Motion under 12(b)(1), the Court is not limited to the allegations of the Complaint for purposes of that Motion. *Mowery v. Nat'l Geospatial-Intelligence Agency*, 42 F.4th 428, 433 (4th Cir. 2022) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.") (citations and internal quotation marks omitted).

**B.      The Gwinnett County, Georgia Action**

To date, Phillip Rogers' company, OADS, owes over $321,863.59 to IFLYAJET, in breach of the N250KC Agreements that Plaintiff claims are the subject of this action. Brown Dec. at ¶ 13. OADS' breach of contract is the subject of Civil Action No. 22-A-10788-10, filed December 20, 2022, and currently pending in the Superior Court of Gwinnet County in the State of Georgia (the "Georgia Action"). *See* Exhibit 1, Complaint. Plaintiff has not paid any money to IFLYAJET in connection with N250KC. Brown Dec. at ¶ 9. Instead, as shown by OADS' own records, OADS, not Brown, made an initial capital contribution for the purchase of N250KC and OADS has been the only entity to pay for OADS' proportional share of OADS' use and maintenance of N250KC. Exhibits 6 & 7.  OADS quit paying on or about September 2022, leading to the Georgia Action. Brown Dec. at ¶ 12.

OADS, a defendant in the Georgia Action, and a party to the underlying N250KC Agreement, has made nearly identical counterclaims in the Georgia Action as those alleged by Plaintiff in the instant action. *See* Exhibit 2 at pg. 8-19. Specifically, OADS claims that IFLYAJET has operated an illegal charter in breach of the N250KC agreements and that IFLYAJET has fraudulently signed documents. *Id.* OADS has also claimed, in the Georgia Action, that Mr. Rogers did not authorize the signature appearing on the October 2022 agreement. Exhibit 2 at 12-13.

The Georgia Action is specially set for trial in April 2024. Exhibit 4. Discovery is currently on-going and set to close on February 29, 2024. *Id.* OADS has conducted extensive discovery, serving numerous document requests and third-party requests. OADS has, to date, taken IFLYAJET's deposition as well as at least six (6) third party depositions. Brown Dec. at ¶ 23. In addition, on April 12, 2023, OADS filed a Motion for Summary Judgment, choosing to do so prior to the close of discovery.  Brown Dec. at ¶ 16.  Following a Rule 56(f) extension, IFLYAJET

opposed the motion. Brown Dec. at ¶ 17. The Court held a hearing on OADS' Motion at which OADS asserted that the October 2022 Agreement was fraudulently signed. Brown Dec. at ¶ 18; Exhibit. 2 at 12-13. On October 27, the Court denied OADS' motion for summary judgment. Exhibit 3.

Through discovery in the Georgia Action, IFLYAJET learned that Plaintiff and his wife, Alicia Rogers, transferred OADS's entire interest and obligations in N250KC to a newly formed, empty shell company, WHBB, LLC, for no consideration and for the specific purpose of avoiding liability. *See* Exhibit 5, Motion to Add Parties. On October 9, 2023, based on these new facts, IFLYAJET petitioned the court in the Georgia Action to add both Plaintiff and his wife in their individual capacities as parties to the suit. Exhibit 5. Two days later, Plaintiff filed the instant action in this Court. *See* Dkt. 1.

## ARGUMENT AND SUPPORTING AUTHORITY

The Court should dismiss the Complaint for at least three independent reasons, any one of which should dispose of the case in this Court.

First, the Complaint is grounded in allegations regarding the Agreements, one of which contains a forum selection clause stating that any disputes regarding that agreement would be decided by the Georgia courts. *See Equity Trust Company v. Jones*, 339 Ga. App. 11, 12 (2016) (explaining that forum selection clauses operate as separate agreements and are presumed enforceable and citing *Scherk v. Alberto-Culver Co*., 417 U. S. 506, 519 (1974)) (other internal citations omitted); *see also Albemarle Corp. v. Astrazeneca UK Ltd*., 628 F.3d 643, 649 (4th Cir. 2010) ("[W]hen parties to a contract confer jurisdiction and venue on a particular court, as a geneal matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable.") (citation omitted).  Forum selection clauses are "presume[ed] valid and

enforceable unless the plaintiff makes a strong showing that it would be unfair or unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 92 (1972); *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 209-10 (4th Cir. 2022) ("[C]ourts will enforce such clauses in all but the most exceptional cases.") (citation and internal quotation marks omitted); *Turner v. Costa Crociere S.P.A*., 9 F.4th 1341, 1345 (11th Cir. 2021). Here, Plaintiff cannot make the necessary strong showing that it would be unfair or unreasonable to enforce the forum selection clause.

Second, Plaintiff lacks standing to sue for either fraud or declaratory judgment. A plaintiff must have standing because otherwise, there is no case or controversy, and the suit must be dismissed. *See*, *e.g*., *House v. Mitra QSR KNE LLC*, 796 Fed. Appx. 783, 789 (4th Cir 2019).

Third, Plaintiff has failed to state a claim for which relief may be granted for each of his three counts: fraud, declaratory judgment, and for an injunction. A motion to dismiss for failure to state a claim should be granted unless the complaint alleges sufficient facts such that the plaintiff's right to relief is more than speculative. *See Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012) (internal citations omitted).

## I.   Plaintiff's Complaint Should be Dismissed Under the Doctrine of Forum Non Conveniens Because the Underlying Agreement is Subject to a Valid Forum Selection Clause.

Plaintiff's Complaint should be dismissed under the doctrine of *forum non conveniens* because the Parties' valid forum selection clause places jurisdiction exclusively in the State of Georgia. *Forum non conveniens* is the common law doctrine enabling a court to dismiss a case when a foreign forum is the more appropriate venue based on a range of convenience related factors. *Sinosiachem Inter'l Co. v. Malaysia Inter'l Shipping Corp.,* 549 U.S. 422, 425 (2007). In a case without a forum selection Clause, a defendant arguing in favor of a transfer "must prove

that an alternative venue is available, adequate, and more convenient (in light of the public and private interests involved) than the forum selected by the plaintiff." *Hilb Group of New England, LLC v. LePage,* 2022 U.S. Dist. LEXIS 88175 (E.D. Va. May 16, 2022) (citations omitted). But, in cases in which there is a valid forum selection clause, the governing analysis changes and the Court should only consider public interest cases, not the parties' private interests. *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas,* 571 U.S. 49, 64 (2013); *see also Yancey v. Int'l Fid. Ins. Co.*, No. 1:16cv57, 016 U.S. Dist. LEXIS 68728, at \*24 (E.D. Va. May 25, 2016) ("[I]n the event the clause points to a state or foreign forum, it is *forum non conveniens* that may permit dismissal, not Rule 12(b)(3)") (citations omitted). These public factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). "In all but the most unusual cases, 'the interest of justice; is served by holding the parties to their bargain" *Atl. Marine Constr. Co.,* 571 U.S. at 67. Indeed, The Supreme Court has held that a valid forum selection clause is to control in all but the most exceptional cases. *Id.* at 60-66.

The forum selection clause in the July Management Agreement is mandatory: "[a]ll parties agree to submit to the exclusive jurisdiction of the courts in Georgia." Dkt. 1-4 at Section 14(a). Thus, Plaintiff bears the burden of showing that the clause should not be enforced. *BAE Sys. Tech Sol. & Servs. v. Republic of Korea's Def Acquisition Program Admin,* 884 F.3d 463, 471 (4th Cir. 2018); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 (1972); *Turner v. Costa Crociere S.P.A.*, 9 F.4th 1341, 1345 (11th Cir. 2021).

The Court should enforce the forum selection clause and dismiss the case because it was brought in an improper forum. In addition to the valid, mandatory forum selection clause in the July Management Agreement, both N250KC Agreements are governed by Georgia law, which is, of course, most efficiently applied by Georgia courts. Dkt. 1-3 at ¶ 11(e) ("This Agreement is governed by, and will be construed and enforced in accordance with, the laws of the State of Georgia."); Dkt. 1-4 at Section 14(a) ("This Agreement has been negotiated and delivered in the State of Georgia and shall in all respects be governed by, and construed in accordance with, the laws of the State of Georgia, including all matters of construction, validity and performance, without giving effect to its conflict of laws provisions."). Thus, enforcement of the forum selection clause favors the public interest in having the trial of this diversity case in a forum that is at home with the law that will govern the action. Enforcement will also avoid unnecessary problems in conflict of laws and this Court's application of foreign law.

Both IFJ and Brown are Georgia citizens. Thus, the Georgia Courts have an interest in the action; and, this is not an action that is localized solely to Virginia. In fact, Plaintiff is not a citizen of the state of Virginia.  For these reasons, it is not unfair to ask a Georgia jury to decide the issues of this case. This is especially so because a Georgia jury will be deciding these same issues in April 2024 in the Georgia Action.

Plaintiff has chosen to frame his Complaint as if he had expended his personal funds to purchase N250KC. The premise is untrue, disproven by his own allegations and exhibits, and the Court should dismiss the claims.  Meanwhile, if the Court declines to dismiss the claims, Plaintiff's choice to center his claims around the N250KC Agreements and to have the language of the N250KC Agreements form the basis of his fraud claims (*see e.g.,* Dkt. 1 at ¶ 19) confirms the validity of the forum selection clause. This Court should enforce the forum selection clause if it

allows any claims to remain. Plaintiff has not alleged any rescission or tender of rescission, nor has Plaintifff alleged that the forum selection clause is invalid. There is no valid reason why this Court should ignore the forum selection clause. Thus, the Court should dismiss Plaintiff's Complaint for *forum non conveniens*. *See Atl. Marine Constr. Co.,* 571 U.S. at 63.[7]

## II.   Plaintiff's Complaint Must Be Dismissed Under Fed. R. Civ. P. 12(b)(1) Because Plaintiff Lacks Standing, Which Divests This Court of Subject Matter Jurisdiction.

### A.   Legal Standard

Under Article III of the Constitution, standing is required to sue in federal court because standing is an aspect of the requirement that an action present a "case or controversy." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022) (internal citations omitted). Standing is a constitutional minimum, and no case can proceed without it. *Id*. Standing is a matter of jurisdiction; and a motion to dismiss for lack of standing is brought pursuant to Rule 12(b)(1). *DataCell Ehf. V. Visa, Inc.,* 2015 U.S. Dist. LEXIS 100494 (E.D. Va. July 30, 2015) (citing *Taubman Realty Group. Ltd. P'ship v. Mineta,* 320 F.3d 475, 480-81 (4th Cir. 2003)).

To establish standing, a party must have an actual injury that is traceable to the defendant's actions, and it must be likely that the injury can be redressed by a favorable decision in the suit. *See id*. at 596 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "Allegations of possible future injury" are not enough to constitute injury-in-fact. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149 (1990)). For an injury to be concrete, the Supreme Court has emphasized repeatedly

---

[7] Should the Court decline to dismiss this case, IFJ intends to move to transfer this case to the Northern District of Georgia under 28 U.S.C. § 1404(a). Given the pending case in Georgia state court, to which this Court cannot transfer this action, it seems more appropriate to dismiss instead.

that it "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to *himself* that is distinct and palpable, as opposed to merely abstract." *Whitmore,* 495 U.S. at 155 (internal quotation marks and citation omitted) (emphasis added).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial challenge and a factual attack. In a facial challenge, the defendant argues that the complaint "fails to allege facts upon which [standing] can be based," and in a factual challenge, the defendant contends "that the jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In a factual challenge, the Court may look beyond the allegations of the Complaint and examine evidence submitted by the parties. *D.W. v. Chesterfield County Schools,* 2018 U.S. Dist. LEXIS 105144 at *13 (E.D. Va. 2018). There is no presumption that the factual allegations in Plaintiff's Complaint are true for such a motion. *Id.*

Here, the Complaint fails under both a facial and a factual challenge.

**B.    Plaintiff Does Not Have Standing**

Plaintiff does not have standing to assert his fraud or declaratory judgment claims because Plaintiff has not himself suffered any harm. Likewise, Plaintiff's count for injunctive relief fails because it is a mere remedy and not an independent cause of action and is subject to dismissal on that basis as discussed in Section C.3. As a remedy, if the Court dismisses the two independent causes of action for lack of standing, the remedy claim must also fail. Thus, Plaintiff's Complaint should be dismissed in its entirety for lack of standing.

**1.    Plaintiff does not have standing to bring his fraud claim.**

Plaintiff's fraud allegations do not establish that Plaintiff has himself suffered an injury in fact. Instead, Plaintiff's allegations establish that he has not suffered a concrete injury in his individual capacity and that any alleged damage that may be personal to Plaintiff (the potential

loss of his pilot's license) is based on no more than the speculative threat of a potential future injury.

> ### i.     Plaintiff did not purchase a share of N250KC, is not a "buyer," did not personally pay any money to IFJ and thus cannot claim economic damages.

OADS, not Plaintiff, has an ownership interest in N250KC. Throughout the Complaint, Plaintiff refers to himself as a "buyer" and an "owner," and claims that he purchased N250KC. *See e.g.,* Dkt. 1 at ¶ 1, 10, 15, 19, 22, 24, 26, 39. Despite Plaintiff's repeated reference to himself as the owner of N250KC, within the Complaint, Plaintiff concedes that OADS, not Plaintiff, owns the subject share of N250KC: "The purchase of Rogers' share of the N250KC was completed in or around January 2021, with Rogers ultimately purchasing the quarter share of the N250KC *through his company OADS.*" Dkt. 1 at ¶ 19; *see also* ¶ 20 ("Rogers, through his affiliated entity, purchased a share of the N250KC . . .); ¶ 22 ("Rogers' purchase of the N250KC (*through OADS*) . . .").

The Exhibits attached to the Complaint further establish that OADS holds the 24.75% interest in N250KC.  *See* Dkt. 1-3 at pg. 1; Dkt. 1-4 at pg. 1.  In fact, Plaintiff is not a party to the underlying Agreements. *Id.* To the extent that the N250KC Agreements contradict the allegations of the Complaint, the Exhibits control. *Goines*, 822 F.3d at 166 (explaining the "exhibit-prevails rule") (citations and internal quotation marks omitted); *Davis v. Cole*, 999 F. Supp. 809, 812 (E.D. Va. 1998) (internal citations omitted). Contrary to Plaintiff's assertions, he does not and never did have any share in N250KC, as is clear on the face of the N250KC Agreements.

Because Plaintiff never held an ownership interest in N250KC—as proven on the face of his Complaint and accompanying exhibits—he has not and cannot be injured for any alleged devaluation of N250KC or the alleged unsalability of N250KC. Those alleged damages, if any,

are only damages to OADS. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 349 (4th Cir. 2013) (holding LLC members lacked standing to bring claims for tortious interference with contract when they were not parties to the contract and the injuries suffered derived entirely from the injury their company allegedly sustained). As the court stated in *Painter's Mill Grille*: "At bottom, [members] gave up standing to claim damages to the LLC, even if they also suffered personal damages as a consequence." 716 F.3d at 348. Indeed, OADS has brought nearly identical claims in the Georgia Action, demonstrating that OADS recognizes that the alleged damages regarding the value of N250KC and any damages related to monies paid to IFLYAJET under the N250KC Agreements belong to OADS, not Plaintiff personally.

Plaintiff alleges that he spent $400,645.09 since the purchase of the N250KC to cover maintenance and usage expenses and $550,000.00 in capital expenditures. Dkt. 1 at ¶ 38. These claims are untrue as proven by his own allegations. The Complaint, on its face, demonstrates that Rogers did not purchase a share of N250KC, rather OADs purchased N250KC. Because the contracts, attached to the Complaint as Exhibits C and D, are between IFJ and OADS, the Complaint demonstrates that Plaintiff did not pay any money to IFJ in his personal capacity, but only as a member of OADS. And,under a factual challenge to subject matter jurisdiction as IFJ makes here, IFJ's evidence further proves that it was OADS that made the initial capital contribution and that OADS, not Plaintiff, paid all monies associated with its ownership of a percentage of N250KC. Brown Dec. at ¶ 10-11, Exhibits 6-7. Plaintiff has not paid any personal funds for N250KC. Brown Dec. at ¶ 9.

ii. **Plaintiff does not have standing to make a fraud claim because the alleged risk to his pilot's license is merely a speculative, potential future injury.**

Plaintiff has failed to allege any facts to support the speculation that his pilot license is at risk. Dkt. 1 at 45. Rather, the alleged risk to his pilot's license is at best a potential, future injury that is not definite and concrete. The loss of Plaintiff's pilot's license is merely something that may occur in the future. The risk is even further attenuated because Plaintiff is not rated on a Gulfstream Jet such as N250KC. Brown Dec. at ¶ 7.  Not only has Plaintiff never flown N250KC, N250KC's insurance policy expressly prohibits Plaintiff from manipulating the controls of N250KC—so he should not pilot it. Brown Dec. at ¶ 6, 8.  In fact, Plaintiff is not even allowed on N250KC except as a guest of OADS. Brown Dec. at ¶ 4. Because Plaintiff has not and cannot claim to have suffered any actual injury, he has no standing. *Ali*, 26 F.4th 587 at 595. Thus, Plaintiff's fraud claim must be dismissed for lack of subject matter jurisdiction on this additional basis. *See id.*

iii. **Plaintiff Does Not Have Standing to Assert his Declaratory Judgment Claim**

Plaintiff does not have standing to assert his declaratory judgment claim because the allegedly fraudulent signature was in Plaintiff's capacity as President of OADS, not in his personal capacity. Plaintiff alleges that "Brown repeatedly affixed [Plaintiff's] signature to *corporate documents* without Rogers' consent." Dkt. 1 at ¶ 54. Any injury caused by that alleged practice could only be suffered by OADS, not Plaintiff, as Plaintiff chose not to enter into a relationship with IFLYAJET in his personal capacity. Instead, OADS purchased N250KC, as Plaintiff is well aware.  As is true of his fraud claim, Plaintiff's alleged damages derive solely from whatever damage OADS may have suffered based on the alleged fraudulent signature. OADS has taken the position in the Georgia Action that the 2022 October Agreement is void based on that alleged fraud. Exhibit. 2.  Plaintiff has not suffered any damage in his personal capacity because he is not

a party to the contracts. *See e.g., Painter's Mill Grille,* 716 F.3d at 349 (4th Cir. 2013). Thus, the Court should dismiss Count II for Declaratory Judgment for Lack of Standing.

### B.   The Court should exercise its discretion to decline declaratory judgment jurisdiction

The Declaratory Judgment Act allows a district court, in a case or controversy otherwise within its jurisdiction, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *MCCOA, LLC v. Retail Serv. Sys.,* No. 7:17cv505, 2018 U.S. Dist. LEXIS 16569, 2018 WL 662507, at *2 (W.D. Va. Feb. 1, 2018) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)).

The Court may exercise jurisdiction in a declaratory judgment action when three requirements are met: (1) the complaint alleges an "actual controversy" between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Al-Aromah v. Tomaszewicz*, 2019 U.S. Dist. LEXIS 154638, *12-13 (W.D. Va. September 11, 2019).

A declaratory judgment is appropriate when it will clarify and settle the issues at hand, thus terminating the entire controversy. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996). A court should rule on the merits of a declaratory judgment action only "when declaratory relief 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Volvo Constr. Equip.*, 386 F.3d at 594. (quoting *Aetna Cas. & Sur. Co. v.*

*Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). A declaratory judgment is ***not*** appropriate "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Id*. (emphasis added).

Here, there is *no* controversy between the parties. Plaintiff claims that "Brown repeatedly affixed Rogers' signature *to corporate documents* without Rogers' consent, including, but not limited to, the October 2022, Joint Ownership Agreement of the Owners of N250KC." Dkt. 1 at ¶ 54 (emphasis added). Plaintiff asks the Court to find that Brown's alleged "practice" is "fraudulent" and to "void" the documents, including the October 2022 Ownership Agreement.

As already explained in detail, Plaintiff is not a party to the October 2022 Ownership Agreement or any other alleged "corporate document." Plaintiff acknowledges that the documents, including the October 2022 Agreement are "corporate documents." Plaintiff attached the October 2022 Agreement to the Complaint as Exhibit B, mislabeling it as a purported January 2021 Agreement. *See* Dkt. 1-2 at 1, 10; *see also* Brown Dec. at ¶¶ 24-26. That document demonstrates— as Plaintiff acknowledges—that Plaintiff is not a party to the Agreement. Instead, OADS is a party to the Agreement. Plaintiff's signature is affixed not in his personal capacity, but only as President of OADS. Dkt. 1-2 at 10. Thus, if there is any controversy regarding the allegedly fraudulently affixed signature, the cause of action belongs to OADS, not Plaintiff.

Moreover, a declaratory judgment is not appropriate solely to remedy past misconduct. It is "only appropriate when it would 'serve a useful purpose in clarifying and settling the legal relations in issue' to guide the parties for the future." *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture,* 235 F. Supp. 2d 485, 494 (ED. Va. 2002) (quoting *Dunn Computer Corp. v. Loudcloud, Inc.,* 133 F. Supp. 2d 823, 829, 259 B.R. 472 (E.D. Va. 2001)). Here, Plaintiff seeks solely to remedy alleged past misconduct.

OADS has brought substantially similar claims in the Georgia Action. Thus, it would result in piecemeal litigation for this Court to entertain a declaratory judgment action. That case is specially set for trial in April 2024. Exhibit 4. When a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court." *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 495 (1942). Courts should consider a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding . . . ." Id.; *see also Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992).

OADS has already asserted that Brown fraudulently affixed Plaintiff's signature on the October 2022 Agreement. Exhibit 2 at 12-13. The Georgia Action is best suited to adjudicate the claims of the *real* parties in interest. Thus, the Court should decline to exercise jurisdiction over the declaratory judgment claim.

## III. The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) Because Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted.

A claim should be dismissed for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6) unless the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Plaintiff must allege sufficient facts to make his claims plausible, not just conceivable. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (stating that a plaintiff's claims must be dismissed if they have not alleged facts sufficiently plausible to "[nudge] their claims across the line from conceivable to plausible"). Under Fed. R. Civ. P. 9(b), claims of fraud are held to a higher pleading standard, requiring that "a party must state with particularity the circumstances constituting fraud."

### A.      Plaintiff has not set forth plausible facts to state a claim for fraud.

To state a claim for fraud under Virginia law,[8] a plaintiff must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. v. Remley*, 270 Va. 209, 618 S.E.2d 316, 321 (Va. 2005); *SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 335 (4th Cir. 2013); A fact is material "when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred." *Packard Norfolk, Inc. v. Miller,* 198 Va. 557, 95 S.E.2d 207, 211-12 (Va. 1956) (citations omitted). To succeed on this Motion, IFJ need only show that one of the elements is implausible. *Palmetto Pharms. LLC v. AstraZeneca Pharms. LP,* 2012 U.S. Dist. LEXIS 18019, at * 24 (D.S.C. January 4, 2012) (granting motion to dimiss claim because Plaintiff could not establish one element of claim). In fact, the Complaint fails to plausibly plead multiple elements.

Plaintiff claims that Brown "made material misrepresentations in connection with the negotiation of the purchase of the N250KC and from failing to disclose that . . . IFJ, had orchestrated and was operating an illegal charter operation." (Dkt. 1 at ¶ 48). But, as previously discussed, Rogers did not purchase any interest in N250KC. OADS purchased N250KC. Thus, any alleged material misrepresentations or omissions were to OADS, not Plaintiff personally. Thus, it is implausible that Plaintiff himself was misled.  It is not enough for Plaintiff to claim that Brown made misrepresentations to him in his personal capacity if those misrepresentations were not material and did not induce Plaintiff to purchase N250KC himself. Any alleged

---

[8] The elements of fraud are the same under Georgia law. *Tershakovec v. Ford Motor Co., Inc*., 79 F.4th 1299, 1306 (11th Cir. 2023).

misrepresentations that Plaintiff claims IFJ made to Plaintiff in his personal capacity could not have been material to Plaintiff because they did not induce *Plaintiff* to act in his personal capacity. If there is a claim for fraud, that claim is OADS' to make as OADS would be the party claiming to have been misled. Indeed, OADS has made that very claim in the Georgia action. Because Plaintiff is not, and never has been, a party to the Agreements, he has not plausibly alleged any *material* misrepresentations.

Plaintiff's fraud claim also fails because Exhibit B to the Complaint proves that Plaintiff cannot show any reliance on the alleged misrepresentations. OADS, not Plaintiff, purchased N250KC. Plaintiff has not, and cannot, allege any actions he took in his personal capacity in reliance upon any alleged misrepresentations made to him in his personal capacity. In other words, he has pleaded himself out of Court with respect to any claim of fraud on him personally.

Finally, Plaintiff has not plausibly alleged that he has suffered any damages as a result of the alleged misrepresentations. IFJ's agreements are with OADS. Although Plaintiff alleges that he paid nearly $1,000,000.00 to IFJ as an initial capital contribution for N250KC and for use of N250KC, those allegations are not plausible on their face. Plaintiff is not a party to the N250KC Agreements. The Agreements (attached as Exhibits C and D to the Complaint) demonstrate that OADS, not Plaintiff, was required to make an initial capital contribution and that OADS was required to pay for maintenance and use of N250KC. Thus, it is not plausible that Plaintiff personally paid nearly $1,000,000.00 to satisfy OADS' obligations—if he paid anything, the Complaint and Exhibits demonstrate those payments were made on behalf of OADS. Because the Agreements, attached as Exhibits to the Complaint, demonstrate that the factual allegations are untrue, the Court need not accept those factual allegations. "Where there is a conflict between the bare allegations of a complaint and any exhibit attached pursuant to Rule 10(c), the exhibit

prevails. Consistent with these holdings, the Court will examine a 12(b)(6) motion in light of the facts alleged in the complaint and the exhibits attached, deferring to the exhibits where there is a conflict." *Davis,*, 999 F. Supp. at 812  (internal citations omitted). Nor can Plaintiff claim damage based on alleged devaluation of N250KC because Plaintiff does not own N250KC, does not have the right to sell N250KC and is not entitled to any proceeds from the sale of N250KC. *See* Dkt. 1-3 at 1; Dkt. 1-4 at 1 (both showing that OADS, not Plaintiff, holds an ownership interest in N250KC).

A complaint does not allege damage "where the position of the complaining party is no worse than it would have been had the alleged fraud not been committed." *SecureInfo Corp. v. Telos Corp.,* 385 F. Supp. 2d 593, 616 (E.D. Va. 2005); *see also Murray v. Hadid*, 238 Va. 722, 385 S.E.2d 898, 904, 6 Va. Law Rep. 833 (Va. 1989) (upholding trial court's decision to set aside jury award on damages because Plaintiffs "did not actually lose anything" as a result of Defendants' fraud). Here, because Plaintiff did not purchase N250KC, has never owned N250KC, and has not paid any money for the use of N250KC, Plaintiff is no worse than he would have been had the alleged fraud not been committed. Plaintiff's allegation that his pilot's license is "at risk" is insufficient to save the claim because it has not happened—it is no injury suffered. *See SecureInfo Corp. v. Telos Corp.,* 387 F. Supp. 593, (E.D. Va. 2005) (dismissing fraud claim under Rule 12(b)(6) because allegation that plaintiff suffered damages because defendants "have now learned and retained Plaintiff's  . . . copyrighted-protected information which they may use" were not actual damages but only damages that may occur should the defendants use the information). As in *SecureInfo Corp.,* the loss of Plaintiff's pilot's license is only something that Plaintiff believes *may* occur should the FAA find, in the future, that IFLYAJET is operating an illegal charter *and* should the FAA find that Plaintiff improperly assisted in that operation. Plaintiff has alleged no

facts that plausibly raise more than a speculative possibility of potential future damage. Accordingly, the Court should dismiss Plaintiff's claim for fraud under Rule 12(b)(6) for failure to state a claim.

**B.      Plaintiff has failed to state a claim for declaratory judgment**

Plaintiff's declaratory judgment claim is an attempt to skirt Fed.R.Civ.P. 9's specificity requirement. Plaintiff asks for a declaration that Brown's "practice" is fraudulent. Thus, at heart, Plaintiff's declaratory judgment count is a fraud claim that is governed by Federal Rule of Civil Procedure Rule 9. Rule 9(b) requires that when "alleging fraud . . ., a party must state with particularity the circumstances constituting fraud." To meet this standard, "a plaintiff must plead the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle Nat'l Bank*, 922 F. 3d 535, 553 (4th Cir. 2019) (quotation omitted).

Plaintiff attempts to plead a practice, identifying only one corporate document on which Brown allegedly fraudulently affixed Plaintiff's signature. Even if true, the signature is that of OADS, not Rogers.  Plaintiff fails to plead with particularity any other allegedly fraudulently signed documents. This failure is particularly striking given the wealth of discovery obtained by OADS in the Georgia Acton. In short, there is no time, place, or manner of any specific fraudulent conduct alleged.  Thus, the Court should dismiss the declaratory judgment count for failure to state a claim or exercise its discretion and dismiss Plaintiff's declaratory judgment claim for lack of subject matter jurisdiction.

**C.      Plaintiff's Count III for a Preliminary and Permanent Injunction is not an independent claim and should be dismissed.**

Plaintiff asserts an independent count, Count III for "Preliminary and Permanent Injunction." Count III should be dismissed for failure to state a claim because "injunctive relief is

a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action." *Bloch v. Exec. Off. Of the President,* 164 F. Supp. 3d 841, 862-63 (E.D. Va. 2016); *Power Home Solar, LLC v. Sigora Solar, LLC*, TTC-20-00042, 2021 U.S. Dist. LEXIS 163753 (W.D. Va. Aug. 30, 2021) ("a request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the nine substantive counts.") "District courts summarily dismiss remedies pleaded as causes of action." *Id.; see Bloch, i*164 F. Supp. 3d 862-63. Plaintiff's Count III merely seeks a remedy for Plaintiff's fraud and declaratory judgment claims. Therefore, the Court should dismiss Count III for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendants IFLYAJET, Inc. and Mr. Robert Brown respectfully request that the Court dismiss Plaintiff's Complaint in its entirety because the Court lacks subject matter jurisdiction, because Plaintiff does not have standing to sue, because Plaintiff has not alleged any facts that, if true, establish viable claims, and because the underlying Agreements are subject to a valid forum selection clause, which designates the State of Georgia as the proper forum.

Dated: November 9, 2023     ROBERT BROWN
             IFLYAJET, INC.

             _____/s/ John M. Erbach_____
             John M. Erbach (VSB No. 76695)
             Chris W. Bascom (VSB No. 87302)
             SPOTTS FAIN P.C.
             411 E. Franklin St., Suite 600
             Richmond, VA 23219
             T: (804) 297-2000
             F: (804) 697-2144
             E: jerbach@spottsfain.com
              cbascom@spottsfain.com